**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

DOROTHY C. POWELL,                          :

                               Case No. 3:07-cv-074

            Plaintiff,

                               District Judge Walter Herbert Rice
                               Chief Magistrate Judge Michael R. Merz

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.                     :

---

### REPORT AND RECOMMENDATIONS

---

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 30, 2003, alleging disability from May 3, 2003, due to uncontrollable high blood pressure, frequent migraines, mitral valve prolapse, loss of vision, black outs, confusion, and falling asleep. (Tr. 55-57; 72-80).  Plaintiff's application was denied initially and on reconsideration.   (Tr. 30-33; 35-37).   A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 339-66), who determined that Plaintiff is not disabled. (Tr. 13-23). The Appeals Council denied Plaintiff's request for review, (Tr. 5-8), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe residuals of a subtotal colectomy, hypertension, and headaches, but that she does not have an impairment or combination of impairments that meets or equals the Listings.  (Tr. 19, finding 3;

3

Tr. 20, finding 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.,* finding 5. Judge Padilla then found that Plaintiff's impairments do not prevent her from performing her past relevant work as a floor manager and a customer service supervisor. (Tr. 22, finding 6). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 23).

Plaintiff has a history of bronchial asthma, hypertension, mitral valve prolapse, migraine headaches, hyperlipidemia, osteoporosis, peripheral vascular disease, and a right vertebral artery dissection. *See* Tr. 129-57.

Dr. Jit began treating Plaintiff in August, 2001, when she complained of nausea and vomiting blood. (Tr. 194-200). At the time Dr. Jit first examined Plaintiff he reported that her symptoms could be due to a tear or peptic ulcer disease, inflammatory bowel disease, colon polyps, a mass, or internal hemorrhoids. *Id.* On October 1, 2001, Dr. Jit performed a colonoscopy which revealed diverticulitis of the sigmoid colon, grade 2 internal hemorrhoids, and a very tortuous colon. *Id.* On September 6, 2002, Dr. Jit reported that Plaintiff had recurrent episodes of acute diverticulitis and that if she had another episode she should be referred to surgery for consideration of a partial colon resection. *Id.*

Plaintiff was hospitalized August 16-20, 2002, for treatment of acute colitis of unknown etiology. (Tr. 173-93). Plaintiff responded well to treatment, and was discharged. *Id.*

Plaintiff underwent a laparoscopic cholecystectomy on October 23, 2002. (Tr. 203-08). Plaintiff tolerated the procedure well and was discharged. *Id.* Subsequently, Plaintiff developed nausea and vomiting and was again admitted to the hospital for treatment of colitis. (Tr. 209-23). During that October 31-November 8, 2002, hospitalization, Plaintiff underwent a subtotal

colectomy with ileostomy. *Id.*

During the period September-November, 2002, Plaintiff was evaluated by and under the care of cardiologist Dr. Maraboyina of the Dayton Heart Center. (Tr. 224-35). Dr. Maraboyina treated Plaintiff for chest pain, hypertension, and mitral valve prolapse. *Id.*

Plaintiff was hospitalized January 22-28, 2003, at which time she underwent a take-down of her ileostomy with an ileorectal anastomosis. (Tr. 236-43). With the exception of some post-operative pain control issues, Plaintiff tolerated the procedure well and was discharged. *Id.*

Dr. Agarwal has been Plaintiff's treating physician since at least March, 2001, and he has treated her for various medical conditions including migraine headaches, hypertension, dizziness, asthma, and abdominal pain. (Tr. 269-300). On August 1, 2003, Dr. Agarwal reported that Plaintiff's diagnoses were poorly controlled hypertension, asthma with COPD, migraine headaches, status post colectomy with ileorectal anastomosis, and frequent diarrhea. (Tr. 264-66). Dr. Agarwal also reported that Plaintiff's hypertension, migraine headaches, and diarrhea needed to be controlled, and that she had multiple chronic problems. *Id.* On January 4, 2004, Dr. Agarwal reported that Plaintiff's blood pressure was 190/100, that her physical exam was negative, that her blood pressure continued to fluctuate, and that due to all of her medical problems, Plaintiff was not able to engage in any gainful employment. (Tr. 261-63). Dr. Agarwal reported on July 28, 2004, that Plaintiff was able to lift/carry up to 1 pound occasionally, stand/walk and sit each for less than 1 hour, that she was unable to use her upper extremities and hands for any activities, and that she should avoid all postural activities. *Id.*

Plaintiff consulted with digestive specialist Dr. Walsh on October 29, 2004, because her liver enzymes were elevated. (Tr. 314-16). Dr. Walsh reported that Plaintiff had most of her

colon removed in 2002, that she eventually underwent a reanastomosis, and that since then she had done very well and gained 50 pounds. *Id.* Dr. Walsh also reported that Plaintiff continued to have problems with nausea, that she had diarrhea anywhere from 8 to 12 times a day, and that medication helped with the diarrhea. *Id.* Dr. Walsh noted that Plaintiff's diagnoses were history of elevated liver enzymes which could be due to many factors, history of severe hypertension, emphysema, migraines, history of subtotal colectomy, chronic diarrhea, arthritis, and depression. *Id.* On December 2, 2004, Dr. Walsh reported that recent blood tests revealed a normal liver profile except for the alkaline phosphatase which could be elevated due to medications, that Plaintiff was taking Imodium more on a scheduled basis, that she was having about 6 bowel movements a day which Plaintiff described as an improvement, and that her elevated alkaline phosphatase could be due to medications. (Tr. 311-12). Dr. Walsh noted on January 27, 2005, that Plaintiff reported that her diarrhea was similar to what had been reported on December 2, 2004, that she had abnormal laboratory studies, and that a recent MRI revealed a narrowing of the common bile duct. (Tr. 310).

The record contains copies of treating physician Dr. Taylor's office notes dated July 8-October 14, 2005. (Tr. 319-27). Those notes reveal that Dr. Taylor treated Plaintiff for hypertension, headaches, and depression. *Id.* Over time, Dr. Taylor noted that Plaintiff's headaches and hypertension were better with treatment. *Id.*

The record contains additional evidence from Dr. Galbraith and Dr. Schreck dated August-November, 2006. (Tr. 328-38). That evidence was not before Judge Padilla, but was submitted to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge Padilla's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996)

6

(citation omitted).

In her Statement of Issues, Plaintiff alleges that the Commissioner erred by finding that she was not entirely credible, by finding that she is capable of performing substantial gainful activity because there is no medical support for that finding, and by failing to review all of the evidence in the file. (Doc. 5).

In support of her first Issue, Plaintiff essentially argues that the Commissioner erred by rejecting her allegations that she had diarrhea ten (10) to twenty (20) times a day.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case

record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Contrary to Plaintiff's position, the medical evidence does not support her allegation that she needs to use the restroom up to twenty (20) times a day. Specifically, as noted above, on December 2, 2004, Plaintiff's treating physician, Dr. Walsh, noted that Plaintiff reported to him that she had diarrhea only about six (6) times a day, that she was taking Imodium on a scheduled basis, and that her condition with respect to diarrhea had improved. Additionally, Dr. Walsh reported on January 27, 2005, that Plaintiff again reported having diarrhea only about as often as she had previously reported in December, 2004. Finally, the Court notes that when he initially evaluated Plaintiff on October 29, 2004, Dr. Walsh reported that Plaintiff had done "very well" since undergoing the reanastomosis and that she had, in fact, gained fifty (50) pounds since that surgery. There is no medical evidence in the record that supports Plaintiff's allegation of experiencing diarrhea up to twenty (20) times a day and the Commissioner had an adequate basis for rejecting those allegations. *See* Tr. 21.

In support of her second Issue, Plaintiff argues that the Commissioner's finding that she is capable of performing a range of light work has no medical support in the record.

As an initial matter, the Court notes that Dr. Agarwal opined that Plaintiff has significant limitations with respect to abilities to perform work-related activities. However, his opinion is not supported by his own clinical notes and is inconsistent with the other evidence of

8

record. Specifically, as note above, treating physicians Drs. Walsh and Taylor noted that Plaintiff's conditions were better and/or that she was doing very well. Additionally, Dr. Agarwal's pessimistic opinion is inconsistent with the reviewing physicians' opinions. (Tr. 254-59)[1]. Finally, Dr. Agarwal's opinion as to Plaintiff's severely restricted residual functional capacity is inconsistent with Plaintiff's self-reported activities. For example, Plaintiff testified that she walk for 30 minutes, that she has no limitations as to sitting, and that she cooks, puts the dishes in the dishwasher, does laundry, goes to the grocery store, uses the computer, visits with others, watches television, does cross stitching, reads. (Tr. 347-51). The Commissioner had an adequate basis for rejecting Dr. Agarwal's opinion as to Plaintiff's residual functional capacity. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993); *Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997). In addition, Dr. Walsh's and Taylor's reports as well as the reviewing physician's opinions support the Commissioner's conclusion that Plaintiff is capable of performing a range of light work.

For these reasons, the Commissioner did not err by finding that Plaintiff is capable of performing a range of light work.

Plaintiff challenges the Commissioner's decision alleging that he failed to discuss the medical evidence provided by Dr. Taylor.

An ALJ is not required to discuss every piece of evidence in the record. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989); see also, *Thacker v.*

---

[1] The Court notes that the reviewing physicians' opinions support a finding that Plaintiff is capable of performing medium work. However, Judge Padilla noted that he had access to medical evidence to which the reviewing physicians did not have access and he further limited Plaintiff to a range of light work. (Tr. 21).

*Commissioner of Social Security,* No. 02-6138, 2004 WL 1153680 at *3 (6th Cir. May 21, 2004). The question is, of course, whether the Commissioner's decision is supported by substantial evidence on the record as a whole. See *Perales, supra.*

As noted above, Dr. Taylor's office notes cover a period of just over three (3) months and reflect that Dr. Taylor treated Plaintiff for hypertension and headaches, issues that the Commissioner fully considered. Moreover, Dr. Taylor's notes indicate that Plaintiff's condition improved over time. The Commissioner's alleged failure to mention Dr. Taylor's notes is not reversible error.

Plaintiff argues in support of her third Issue that this matter should be remanded for the consideration of the additional evidence she submitted to the Appeals Council. Plaintiff points particularly to Dr. Galbraith's November 15, 2006, report in which she stated that Plaintiff is not able to "safely work" due to her hypertension.

The remand provision of 42 U.S.C. §405(g) provides that the court may order a case remanded to the Commissioner for further consideration "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g); *see also, Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993).

The court may review new evidence submitted after the Administrative Law Judge's decision for the limited purpose of determining the appropriateness of a remand to the Commissioner under sentence six of 42 U.S.C. §405(g). *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992). Such remand is appropriate, however, only if the court finds that the evidence is new and material and there is good cause for the failure to incorporate that evidence into

10

the record of the prior proceeding.  *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th Cir. 1988).

To establish materiality, the plaintiff must show, "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore,* 865 F.2d at 711 (citations omitted).  New evidence on an issue already fully considered by the Commissioner is cumulative and is not sufficient to warrant remand of the matter.  *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980).  Additional evidence is material only if it concerns the plaintiff's condition prior to the Commissioner's decision.  *Oliver v. Secretary of Health and Human Services,* 804 F.2d 964, 966 (6th Cir. 1986).  Evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial.  *Wyatt,* 974 F.2d at 685, *citing, Sizemore,* 865 F.2d at 712.

To show good cause, plaintiff must present some justification for the failure to have acquired and presented such evidence to the Commissioner for inclusion in the record during the hearing before the Administrative Law Judge.  *See, Willis v. Secretary of Health and Human Services,* 727 F.2d 551 (6th Cir. 1984); *see also, Oliver, supra.*  Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act.  *Koulizos v. Secretary of Health and Human Services,* No. 85-1654 (6th Cir. Aug. 9, 1986) (table 802 F.2d 458).

Although Dr. Galbraith essentially opined on November 15, 2006, that Plaintiff is disabled due to hypertension, she provided absolutely no clinical findings to support her opinion. Indeed, there are none of Dr. Galbraith's own contemporaneous office notes included in the additional information.  Nevertheless, for the same reasons the Commissioner had an adequate basis

11

for rejecting Dr. Agarwal's opinion, the Commissioner would have an adequate basis for rejecting Dr. Galbraith's November, 2006, opinion.  Accordingly, there is not a reasonable probability that if he considered Dr. Galbraith's opinion, the Commissioner would reach a different conclusion on Plaintiff's application.  Therefore, the additional evidence does not satisfy the "materiality" requirement for remand.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

August 8, 2007.

*s/ Michael R. Merz*
Chief Magistrate Judge Michael R. Merz

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).